

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIE STEELE, | ) |
|     Plaintiff, | ) |
| | ) No. 05 C 7163 |
| v. | ) |
| | ) Judge Shadur |
| LINCOLN FINANCIAL GROUP d/b/a | ) |
| LINCOLN FINANCIAL ADVISORS | ) Magistrate Judge Cole |
| CORPORATION, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

The facts relevant to the instant motion are not in dispute. In March 2001, Plaintiff, a Lincoln employee, advised James Morris that one of its agents, Terry Fung, sexually assaulted her while she and Mr. Fung were attending a business function in Kansas City. After learning of the allegations, Lincoln was concerned, *inter alia*, about the prospect of future litigation related to the incident. Accordingly, Lincoln's in-house counsel, Mr. Russell Strunk, directed Howard Polk, an investigator of the Lincoln Law Department, to interview Mr. James Morris, Executive Director of the Central Region for Lincoln. There was, in addition, an exchange of emails between various Lincoln employees relating to or arising out of Ms. Steele's allegations.

On March 22, 2007, Ms. Steele moved to compel production of certain documents withheld by Lincoln on the grounds of attorney-client and work product privilege. Most of those objections have been resolved by Judge Shadur, including the transcript of the Morris interview. The only remaining ones relate certain emails, which were produced in redacted form to Ms. Steele. The withheld portions of the emails were produced for *in camera* inspection, and Judge Shadur has

referred the matter here.

The attorney-client privilege is the oldest of the recognized privileges for confidential communications known to the common law. *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996); *Upjohn Co. v. United States* 449 U.S. 383, 389 (1981). Deeply rooted in public policy, *In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir.1997), and playing a "vital role" in the administration of justice, *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 878, (7th Cir.2005), it remains one of the most carefully guarded privileges and is not readily whittled down. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).[1]

The privilege's central concern – and its ultimate justification – is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Without that frankness, sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is unattainable. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). But the privilege – like all testimonial privileges and all exclusionary rules – comes at a price. Since it makes the search for truth more difficult by preventing disclosure of what is often exceedingly relevant information, it is strictly construed and is limited to those instances where it is necessary to achieve its purposes. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 185 (1990); *Fisher v. United States*, 425 U.S. 391, 403 (1976).

The protection of the privilege extends to confidential communications made by a client to his lawyer "[w]here legal advice of any kind is sought . . . from a professional legal advisor in his

---

[1] *Compare United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989)(the attorney-client privilege is often "[n]arrowly defined, riddled with exceptions, and subject to continuing criticism."). Bentham was perhaps the most acerbic and unrelenting critic of the privilege. *See* 8 Wigmore, Evidence, § 2291 at 549 (McNaughton rev.1961).

capacity as such." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir.2000). *See also United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir.1997) (*quoting* 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961)). The privilege is limited to situations in which the attorney is acting as a legal advisor. Business advice does not count and is not protected. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir.2003). Although the privilege is deemed generally to apply only to communications by the client, statements made by the lawyer to the client will be protected where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client. *Rehling*, 207 F.3d at 1019. As Judge Shadur summarized in *Koken v. American Patriot Insurance Agency, Inc.*, 2007 WL 914251 at *2 (N.D.Ill. 2007):

> "'[C]ommunications from the attorney to the client should be privileged only if the statements do in fact reveal, directly or indirectly, the substance of a confidential communication by the client.'[citations omitted]. 'Disclosures from a client to an attorney, are likewise only entitled to limited protection, as the privilege '... protects only those disclosures-necessary to obtain informed legal advice which might not have been made absent the privilege.'"

*See also Bell Microproducts, Inc. v. Relational Funding Corp.*, 2002 WL 31133195 (N.D.Ill. 2002)(Shadur, J.). It is against this analytical backdrop that Lincoln's objections must be assessed.

## THE SPECIFIC EMAILS

On June 6, 2001, Mr. Morris sent an email to Michael Hemp, a Lincoln employee, referring to the Steele matter. That email has been produced. Lincoln has claimed privilege for Mr. Hemp's answer since a copy was sent to Mr. Sweigart. But that is not the test of privilege, as Judge Shadur has stressed. *See Bell Microproducts, Inc.*, 2002 WL 31133195 at *1. The information that was contained in the portion of the email that has been turned over prompted Mr. Hemp to thank Mr. Morris for getting him the information and to conclude that "[t]his needs to be in the hands of our

3

lawyers, so I am sending a cc of your note on to Dave Sweigart." This statement is plainly not privileged and the information that was sent on to Mr. Sweigart has already been disclosed. There then followed a question to Mr. Hemp from Mr. Morris. There is nothing privileged about the question, and it related to events antedating Mr. Fung's hiring and to a person who was not employed by Lincoln. The question is not privileged and the redacted portion must be turned over.

On June 12th, Mr. Strunk, in response to the email of June 6th from Mr. Hemp, wrote to Mr. Morris and Mr. Hemp. The response is captioned "CONFIDENTIAL FROM COUNSEL" and has been withheld on the grounds of attorney-client privilege. The response does not disclose any confidential communications or give any advice. It merely attempts to set a date for a meeting. It is not privileged and should be produced.

On June 12, 2001, Mr. Howard Polk, an investigator at Lincoln, responded to an email from Mr. Morris, which refers to Mr. Fung's conviction in 1977. It asks Mr. Polk to pass the information along to Mr. Sweigart. The information is not a confidential communication seeking legal advice and is not protected. Nor is the answer, which simply refers to the running of a criminal background check and its results. Neither the response nor the attached criminal background check is privileged.

On June 25th, Mr. Randy Bailin, an employee in Lincoln's Ft. Wayne office, wrote to Mr. Strunk. The email requested a meeting or a telephone conference relating to Ms. Steele. Standing alone, it would not be protected since it seeks no legal advice or imparts any client confidences. It merely attempts to set up a meeting. Although the email also makes reference to a letter from a named attorney, it is not protected, even if is assumed that the attorney was involved in Ms. Steele's case. The letter from an outside lawyer is obviously not privileged, and the mere reference to it in an email to Mr. Strunk does not give the email any protection. If the lawyer to whom the email

4

refers is involved in a matter other than the Steele case, that portion of the email can be redacted. But the remainder of the email must be produced.

On October 2, 2001, Mr. Strunk forwarded an email chain to Ruth Knefel, a paralegal in Lincoln's law department, that began with an email from James Morris to Randy Bailen on August 7, 2001. That email has been turned over to Ms. Steele. Mr. Bailin responded by emailing, eighteen minutes later, a request to Mr. Strunk for "help" on Mr. Morris' email to him. It was an explicit request for legal assistance and thus is privileged. Mr. Strunk's August 7, 2001 reply to Mr. Bailen expresses a legal opinion to his client about Ms. Steele's relationship with Lincoln. It is privileged. Mr. Strunk's transmission of the email string to Ms. Knafel on October 2 does not waive the privilege.

On November 8, 2001, Bernadette Doyle, Lincoln's Chicago Operations Manager, emailed Randy Bailen regarding a laptop computer that was being purchased by Ms. Steele. The email is not privileged for obvious reasons. Mr. Bailen's response on November 9th simply notes that their attorney is involved. It also is not privileged, since it does not contain or reveal confidential communications from lawyer to client or client to lawyer.

On January 22, 2002, Mr. Morris emailed Mr. Strunk and stated that "we are looking for guidance as to how to deal with these" referring to the subject matter of the email. The email is privileged.

On January 24, 2002, Mr. Strunk wrote a "CONFIDENTIAL FROM COUNSEL" email to Mr. Morris in which he gave legal advice regarding Ms. Steele's contract. The document is privileged, as are the responses from Mr. Morris on January 24, 2002 and the email from Bernadette Doyle to Mr. Strunk on February 14, 2002. Finally, Mr. Strunk's response to Ms. Doyle on February

14, 2002 provides legal advice and is thus privileged.

On February 14, 2002, Ms. Doyle wrote to Michelle Parillo, a fellow employee in Lincoln's Chicago office, with copies to other Lincoln employees. The document is not to or from a lawyer and does not directly or indirectly reveal client confidences or lawyer's advice. It is not privileged.

In the summer of 2003, Lincoln was involved in mediation of the Steele matter at the EEOC. On July 10, 2003, Ms. Natasha Sears, an EEOC investigator, wrote Mr. Strunk inquiring about the existence or nonexistence of contacts with certain people and Lincoln's legal position and assessment of Ms. Steele's claims. On July 18, 2003, Mr. Strunk responded to the email and clarified what he perceived to be misstatements in the letter. Lincoln has objected to the production of these emails on the grounds that they constitute confidential settlement communications, that "public policy supports the confidential nature of settlement communications. *See Butta-Brinkman v. FCA International, Ltd.*, 164 F.R.D. 475, 477 (N.D. Ill. 1995)", and that public policy prohibits the production of "documents of this type." (*Lincoln Response*, at 5).

*Butta-Brinkman* involved a request for discovery of settlements reached in cases in which the parties seeking discovery were strangers to the negotiations and to the underlying cases. And even there, as Judge Aspen noted, the strong congressional policy favoring settlement in sexual harassment cases weighs in favor of protectability, "so long as the information is available through other means." 164 F.R.D. at 477. In the instant case, Ms. Steele is seeking information about what transpired between the EEOC and her employer in the very matter that ultimately became a case in the district court in which she sued the same employer. The interest in confidentiality under these circumstances is arguably different than that which confronted Judge Aspen in *Butta-Brinkman*.

Lincoln does not dispute the relevancy of the information that is being sought, only its

6

discoverability. But discoverability and admissibility are quite different. *Cf. Silva v. Fortis Benefits Insurance Co.*, 437 F.Supp.2d 819, 831 (N.D.Ill. 2006). Even under Rule 408, Federal Rules of Evidence, settlement discussions between the parties to the litigation may be admissible so long as they are not used to prove liability. *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 483-484 (7th Cir. 2000). In that context, there can scarcely be a claim of privilege.

But the fact remains that Ms. Steele is seeking discovery of information occurring not between her counsel and Lincoln, but with a third party, the EEOC. If that information might have utility (i.e., relevance) beyond proving liability, discovery should not be peremptorily foreclosed. Having said that, Ms. Steele's Motion to Compel makes no attempt to explain what relevance the information might have to the case beyond proving liability. Ms. Steele's Motion simply expresses the desire to see the email exchange between Lincoln's counsel and the EEOC -- an exchange that significantly, the EEOC did not produce when it produced the file related to this matter. (*Response*, at 6).

But interest is not enough. And as noted above, Ms. Steel cites no case for the proposition that statements made during the mediation by an employer are automatically discoverable in any litigation that ensues between the employee and employer. Nor has she attempted to articulate any valid policy reason why they should be discoverable in this case.

Several courts have concluded that there is a settlement privilege, and that statements made in the context of private or court sponsored settlements or mediations are immune from discovery, at least discovery from *third parties*. *See, e.g., Stockman v. Oakcrest Dental Center P.C.*, _F.3d_ 2007 WL 777497 (6th Cir. 2007). But one need not go so far as to find a privilege for the communications sought by Ms. Steele in order to decide that production should not be required here.

7

Indeed, given the virtual absence of briefing by both sides on the question of whether "documents of this type," (*Lincoln Response*, at 5), enjoy a privilege from being discoverable, it would be improvident to decide that question.[2]

Moreover, I need not do so. The Federal Rules of Civil Procedure provide for liberal discovery. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." As expansive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir.1980); *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir.1987), the standard under Rule 26(b)(1) is even broader. *Hofer v. Mack Trucks*, 981 F.2d 377 (8th Cir.1992). Nonetheless, discovery which can only lead to inadmissible evidence is prohibited by the plain language of Rule 26 and would violate the command of Rule 1 of the Federal Rules of Civil Procedure, which requires that the Rules be construed and administered to secure the just, speedy, and inexpensive determination of every action.

On the present record, Mr. Strunk's email exchange with the EEOC during the mediation process is not producible, for the Motion to Compel has made no attempt to explain how production

---

[2] Judges depend upon input from lawyers. *See, e.g., United States v. Cronic*, 466 U.S. 648, 655 (1984)( "'Truth' is best discovered by powerful statements on both sides of the question.'"); *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613-614 (7th Cir. 2006); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992); *Albrechtsen v. Regents of University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002). *See also* Holmes, *The Law*, in Collected Speeches 16 (1931)("Shall I ask what a court would be, unaided? The law is made by the Bar, even more than by the Bench."); Brandeis, *The Living Law*, 10 Ill.L.Rev. 461, 470 (1916)(a "judge rarely performs his functions adequately unless the case before him is adequately presented."); *Adamson v. California*, 332 U.S. 45, 59 (1946) (Frankfurter, J., concurring)("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful arguments on both sides...."). As it pertains to the question of whether the emails with the EEOC are privileged, the parties' briefs effectively provide no guidance, and thus any ruling on the issue would be far less informed than it should be. *Cf. United States v. Elliott*, 467 F.3d 688, 690 (7th Cir. 2006) (Easterbrook, J.)("That judicial comments lacking the benefit of an adversarial presentation are more likely to be uninformed is a principal reason why dicta are not binding....").

of the information might lead to the discovery of *admissible evidence*. Indeed, it concedes that settlement discussions are inadmissible. (*Motion to Compel*, at 9). Thus, the email exchange need not be produced.

## CONCLUSION

The documents that are required to be produced shall be produced not later than the close of business on Thursday, April 5, 2007.

ENTERED: /s/ Jeff Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 4/3/07